THOMAS KENT & another[1] *vs.* COMMONWEALTH & another.[2]

No. 99-P-1182.

Middlesex. April 19, 2001. - July 6, 2001.

Present: RAPOZA, DREBEN, & COHEN, JJ.

Further appellate review granted. 435 Mass. 1103 (2001).

*Practice, Civil,* Motion to dismiss, Interlocutory appeal. *Proximate Cause. Governmental Immunity. Massachusetts Tort Claims Act. Commonwealth,* Claim against, Liability for tort.

In a civil action, a motion to dismiss raising immunity from suit as a defense to one aspect of the plaintiffs' claims was not subject to interlocutory review, where the immunity issue was neither dispositive of the case as a whole, nor collateral to the rest of the controversy as required by the doctrine of present execution. [31-34]

In an action against the Commonwealth and the State parole board alleging that the defendants were grossly negligent in paroling to the custody of the Immigration and Naturalization Service for deportation a convicted murderer serving a life sentence who subsequently shot a police officer, the judge properly denied the defendants' motion to dismiss, where a Superior Court ruling that the parole board had relinquished jurisdiction over the parolee and that he could not be held in State custody did not constitute a superseding event as matter of law; nor did other intervening events, such as the parolee's return to the United States, break the chain of causation as matter of law. [34-37]

CIVIL ACTION commenced in the Superior Court Department on May 28, 1998.

A motion to dismiss was heard by *Ralph D. Gants,* J.

*Crispin Birnbaum,* Assistant Attorney General, for the defendants.

*Leonard H. Kesten* for the plaintiffs.

COHEN, J. Leominster police officer Thomas Kent was shot

---

[1] Rebecca Kent, individually and as parent and next friend of Domenic Kent, Patrick Kent, and Michael Kent.

[2] Massachusetts Parole Board.

and seriously wounded on September 15, 1995, by John J. Mac-Neil, a convicted murderer who had been serving a life sentence in the Massachusetts prison system until his parole in 1987. Kent and his wife and three children brought suit under the Massachusetts Tort Claims Act, G. L. c. 258, against the Commonwealth and the Massachusetts Parole Board, alleging that the defendants were grossly negligent in 1987 when they released MacNeil by paroling him to the custody of the Immigration and Naturalization Service (INS) for deportation to Canada, and that their mishandling of MacNeil's case persisted in 1995, when they failed to reestablish parole jurisdiction over him after learning that he had returned to the United States and was released from Federal custody. These acts and omissions, say the plaintiffs, foreseeably resulted in the shooting of Thomas Kent.

The case is before us on the defendants' appeal from the denial of their motion to dismiss, taken in reliance upon the doctrine of present execution. We affirm.

1. *The complaint.* The facts alleged by the plaintiffs may be summarized as follows. In 1969, MacNeil was sentenced to life in prison on two counts of murder,[3] and to additional concurrent terms on other counts charging him with assault and battery with intent to rob, assault by means of a dangerous weapon, and the unlawful carrying of a shotgun. Twice during his incarceration, MacNeil escaped and committed further crimes before being recaptured. At one point while in prison, he obtained explosives and injured himself while attempting to manufacture pipe bombs.

MacNeil was denied parole when he first became eligible in 1985 and again in 1986. In its denial dated July 14, 1986, the full parole board noted that MacNeil was still in maximum security and that he lacked a pre-release plan and a solid record of accomplishment while incarcerated. However, even though these circumstances remained unchanged, on January 22, 1987, a panel of the parole board recommended that MacNeil be paroled to a deportation warrant. On April 6, 1987, the parole board paroled MacNeil to the custody of the INS for deporta-

---

[3]Although the complaint does not so state, it is represented and we assume that MacNeil's convictions were for second degree murder.

tion to Canada, with only two conditions: that he report by mail to the Massachusetts Parole Board on a quarterly basis and that he not return to the United States. On April 28, 1987, he was deported to Canada.

MacNeil returned to the United States, and was arrested on September 11, 1987, for violating parole. However, on January 14, 1988, a judge of the Superior Court ruled that by paroling MacNeil to the INS rather than to Canadian authorities under G. L. c. 127, § 97B, the parole board had surrendered MacNeil to the authority of the INS and had lost jurisdiction over him. As a result of this ruling, MacNeil was released from State custody and transferred to the INS, which deported him to Canada a second time.

Again, MacNeil returned to the United States. He was taken into custody by the INS on July 12, 1994, and denied bail. However, he was released less than a year later, on June 7, 1995, after it was determined that he was, in fact, a United States citizen. Two days later, he had another skirmish with the law and was arraigned in West Roxbury District Court for having violated a restraining order that his wife had obtained against him. Initially denied release, MacNeil eventually was allowed back on the streets.

On or about June 9, 1995, the parole board decided to attempt to regain custody over MacNeil, but it did nothing to reassert jurisdiction over him before he shot Officer Kent on September 15, 1995. On that day, Kent and his partner responded to a call regarding a suspicious person at a private residence in Leominster. When the officers arrived on the scene, MacNeil emerged from the garage of the residence, firing two guns. Kent was struck in the chest but was able to return fire and kill MacNeil.

2. *The defendants' motion.* The defendants challenge the complaint on two grounds. The first ground, lack of proximate causation, is directed at the complaint as a whole. The defendants argue that, as matter of law, events occurring after MacNeil's parole in 1987 broke any chain of causation and ended any duty of care on their part. The second ground, immunity from suit, is asserted only insofar as the plaintiffs' claims are based upon the defendants' failure to reestablish parole

jurisdiction over MacNeil in 1995. The defendants rely upon the so-called statutory public duty rule, G. L. c. 258, § 10(*j*), as recently interpreted by the Supreme Judicial Court in *Brum* v. *Dartmouth*; *King* v. *Commonwealth*, 428 Mass. 684, 692-696 (1999), for the proposition that they are immune from claims of "failure to act" unless the plaintiffs also can prove that the defendants' affirmative conduct "originally caused" the condition or situation which led to the harm.[4] The defendants contend that the plaintiffs cannot meet the "affirmative act" requirement, because the release of MacNeil in 1987 is too "remote" as matter of law to be the original cause of the condition — MacNeil's armed presence in Leominster in 1995 — that led to the plaintiffs' harm. Both of these grounds for dismissal were rejected by the Superior Court.[5]

3. *Appropriateness of review.* We first consider whether this appeal is properly before us. Ordinarily, the denial of a motion to dismiss is not an appealable order. See *Bean* v. *399 Boylston St., Inc.*, 335 Mass. 595, 596 (1957); *Rollins Envtl. Servs., Inc.* v. *Superior Ct.*, 368 Mass. 174, 178 (1975). One of the exceptions to this rule is the doctrine of present execution, upon which the defendants rely.[6]

The doctrine of present execution is a limited exception to the finality rule which permits immediate appeal of an interlocutory order if the order will interfere with rights in a way that cannot be remedied on appeal from the final judgment, and it involves issues collateral to any remaining controversy. See

---

[4]Section 10(*j*) provides, with enumerated exceptions not relevant here, that sovereign immunity is not waived under the Tort Claims Act as to "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer."

[5]A third ground of dismissal, that the plaintiffs' claims fell within G. L. c. 258, § 10(*b*), the "discretionary function" exception to Tort Claims Act liability, was abandoned by the defendants.

[6]Review may also be sought by petitioning a single justice of this court for leave to prosecute an interlocutory appeal from the denial of a motion to dismiss. See G. L. c. 231, § 118, first par.; *Fairneny* v. *Savogran Co.*, 422 Mass. 469, 470 (1996), citing *Leavitt* v. *Mizner*, 404 Mass. 81, 87-88 (1989). However, the defendants did not do so here. Instead, they filed a notice of appeal claiming an appeal as of right under the authority of *Brum* v. *Dartmouth*; *King* v. *Commonwealth*, 428 Mass. at 687-688.

*Borman* v. *Borman,* 378 Mass. 775, 780-782 (1988); *Maddocks* v. *Ricker,* 403 Mass. 592, 597-600 (1988). Interlocutory orders addressing a defendant's immunity from suit may fall within the ambit of the doctrine of present execution. *Breault* v. *Chairman of Bd. of Fire Commrs. of Springfield,* 401 Mass. 26, 31 (1987), cert. denied sub nom. *Forastiere* v. *Breault,* 485 U.S. 906 (1988); *Duarte* v. *Healy,* 405 Mass. 43, 44 n.2 (1989); *Hopper* v. *Callahan,* 408 Mass. 621, 623-624 (1990); *Brum* v. *Dartmouth*; *King* v. *Commonwealth,* 428 Mass. at 687-688. However, because the inquiry into the existence of immunity is often fact-dependent and may be elucidated by discovery, interlocutory appeals from rulings on immunity typically have arisen in the context of an appeal from the denial of a motion for summary judgment. See *Breault,* supra; *Duarte,* supra; *Hopper,* supra. See also *Matthews* v. *Rakiey,* 38 Mass. App. Ct. 490, 493 (1995) (appeal taken from denial of "motion for qualified immunity" filed in civil rights case after discovery). Still, in an appropriate case, an interlocutory appeal raising immunity from suit also may proceed after the denial of a motion to dismiss, as illustrated by the Supreme Judicial Court's consolidated opinion in *Brum* v. *Dartmouth*; *King* v. *Commonwealth,* 428 Mass. at 687-688, where the court emphasized the importance of early consideration of immunity issues.

The defendants here rely heavily upon *Brum-King,* not only as to the question of appealability, but also, as discussed below, with respect to their substantive contentions. In *Brum-King,* the Commonwealth moved to dismiss a wrongful death claim that alleged that an assistant district attorney was grossly negligent in agreeing to the release on personal recognizance of a criminal defendant who later shot and killed the *Brum-King* plaintiff's decedent. The Commonwealth sought dismissal of the entire case on the ground that it was immune from suit under G. L. c. 258, § 10(*b*) and (*j*), and took an immediate appeal when its motion to dismiss was denied by the lower court. *Id.* at 686. The Supreme Judicial Court entertained the appeal under the doctrine of present execution, observing that immediate appeal, if successful, would effectuate one of the primary objectives of Tort Claims Act immunity from suit, that being the protection of public defendants from the disruption of litigation. *Ibid.*

Although the court ultimately dismissed the case for lack of proximate causation and did not decide the immunity issues, it emphasized that taking this different tack did not deprive it of jurisdiction to decide the appeal. *Ibid.* However, by deciding the case on non-immunity grounds, the court was not called upon to evaluate whether the facts were sufficiently developed at the motion to dismiss stage to permit the reasoned application of § 10(*b*) and (*j*). We therefore do not read *Brum-King* to mean that an immediate appeal from the denial of a motion to dismiss advanced on immunity grounds invariably is appropriate or desirable.

In any event, *Brum-King* made a stronger case for permitting an interlocutory appeal from the denial of a motion to dismiss than does the present case. Because the Commonwealth's immunity defenses in *Brum-King* would have disposed of the entire case had they been reached, immediate review of these issues had the potential to relieve the public defendants from having to defend the case at all. *Id.* at 688-689. Here, on the other hand, the defendants' immunity defense is directed at only one aspect of the plaintiffs' claims — the defendants' alleged failure to reassert parole jurisdiction over MacNeil in 1995; and the immunity issue which is presented, namely whether the parole board's release of MacNeil in 1987 is too remote to serve as an affirmative act within the meaning of the exception contained in § 10(*j*), involves the same factual considerations that infuse the remainder of the case. Consequently, the immunity issue here is neither dispositive of the case as a whole, nor collateral to the rest of the controversy as required by the doctrine of present execution. See *R.J.A.* v. *K.A.V.*, 34 Mass. App. Ct. 369, 374 (1993) (issue "inextricably intertwined" with ultimate matters to be decided is not collateral and not appealable under doctrine of present execution).

Furthermore, even if the doctrine of present execution properly could be invoked, it still would have been preferable to delay any interlocutory appeal of the immunity issue until the trial court had the opportunity to assess the significance of the 1995 allegations on a more expansive record. It is not clear from the face of the complaint alone that the allegations relating to events in 1995 do, in fact, comprise a separate claim that

is susceptible of separate dismissal. The 1995 allegations are not contained in a separate count and may have been included merely to illustrate that the defendants' conduct, throughout the MacNeil affair, went beyond simple negligence. See *Pruzynski* v. *Malinowski*, 338 Mass. 58, 60 (1958) (gross negligence may be found if the defendant persisted in a clearly negligent course of conduct over an appreciable period of time). Accordingly, review of the immunity issue, not to mention the defendants' other ground for dismissal, would have been better deferred until the plaintiffs' claims and supporting facts were further developed.

4. *The denial of the motion.* Because the parties have briefed the issues thoroughly, we exercise our discretion to address the defendants' contentions, concluding that the motion was properly denied. Our review is conducted "in light of the principles that (a) the allegations in the complaint, as well as such reasonable inferences as may be drawn therefrom in favor of [the plaintiffs], are to be taken as true, and (b) a complaint is sufficient 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Eyal* v. *Helen Bdcst. Corp.*, 411 Mass. 426, 429 (1991) (citations omitted). See *Nader* v. *Citron*, 372 Mass. 96, 98 (1977). We emphasize that this is an indulgent standard and that we address only the asserted grounds for dismissal.

The plaintiffs' primary theory of recovery is that the defendants acted with gross negligence in releasing MacNeil in 1987 and in doing so by paroling him to the INS for deportation rather than in a manner that would have allowed the parole board to retain jurisdiction over him until the expiration of his term of imprisonment as required by G. L. c. 127, § 130.[7] In essence, the plaintiffs suggest that the parole board seized the opportunity to rid itself of a dangerous and chronically troublesome prisoner by sending him to Canada, with indifference to a statutory duty to insure meaningful continued supervision over him.

The defendants assume, for purposes of their motion, that the plaintiffs have stated a claim for gross negligence and that the

---

[7]We do not opine as to the nature and extent of the parole board's obligations under the statute.

claim therefore falls within the exception to immunity that is contained in G.L. c. 258, § 10(*i*).[8] However, they argue that the chain of causation is too long and contains too many speculative links to connect the actions of the defendants in 1987 with the shooting in 1995. More particularly, the defendants maintain that the 1988 Superior Court decision that the parole board had relinquished jurisdiction over MacNeil and that he could not be held in State custody was a superseding intervening event as matter of law. Alternatively, they argue that other later events, such as MacNeil's return to the United States, were unforeseeable and broke the chain of causation.

The defendants again analogize to *Brum-King* where it was held, as matter of law, that there was no proximate causation between the prosecutor's recommendation concerning bail and the killing of the plaintiff's decedent, because the power to release resided in the hands of the judicial officer who ordered the release, and not the prosecutor. *Brum* v. *Dartmouth*; *King* v. *Commonwealth*, 428 Mass. at 689. In this case, however, the parole board had the independent power to release MacNeil, and it exercised that power. Thus, no chain of causation is required to link the conduct of the defendants with the release itself. Furthermore, we cannot conclude at this juncture that there is no set of facts which, if proved, would allow a trier of fact to find that the Superior Court's ruling was a logical and foreseeable consequence of the allegedly grossly negligent manner in which MacNeil's release was effectuated. Accordingly, the complaint cannot be dismissed on the ground that the Superior Court ruling was a superseding, intervening event as matter of law. See *Mullins* v. *Pine Manor College*, 389 Mass. 47, 62-63 (1983); *Copithorne* v. *Framingham Union Hosp.*, 401 Mass. 860, 862 (1988); Restatement (Second) of Torts § 442 (1965) (listing factors to consider in determining if an intervening force is a superseding cause, including whether it operated

---

[8]Section 10(*i*) provides that Tort Claims Act liability does not apply to any "claim based upon the release, parole, furlough or escape of any person . . . from the custody of a public employee . . . *unless gross negligence is shown in allowing such release, parole, furlough or escape*" (emphasis supplied).

independently of any situation created by the actor's negligence).[9]

Nor can we conclude that other intervening events, such as MacNeil's return to the United States, broke the chain of causation as matter of law. Again, the touchstone of liability will be foreseeability. "The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise." *Jesionek* v. *Massachusetts Port Authy.*, 376 Mass. 101, 105, (1978), quoting from *Lane* v. *Atlantic Works*, 111 Mass. 136, 139-140 (1872). Because the issue is presented to us on a motion to dismiss, we have no factual record on such potentially relevant considerations as the extent of the parole board's knowledge or reason to know of MacNeil's personal circumstances, his ties to the United States, and the predictability of his return. Although it may be that the plaintiffs will find it difficult to establish that the 1995 shooting was a foreseeable consequence of the parole board's acts or omissions, that is a factual determination which cannot be resolved on the basis of the complaint alone. See *Coughlin* v. *Department of Correction*, 43 Mass. App. Ct. 809, 816 n.10 (1997).

Similarly, assuming that the plaintiffs' allegations with respect to the parole board's failure to return MacNeil to custody in 1995 are intended as a separate theory of recovery, it is premature to decide that this claim is not viable. The defendants are correct that G. L. c. 258, § 10(*j*), would immunize them from a claim for "failure to act" in 1995 unless the plaintiffs also proved that the defendants' affirmative behavior "originally caused" the condition or situation which led to the harm. See *Brum* v. *Dartmouth*; *King* v. *Commonwealth*, 428 Mass. at 692-696, citing *Bonnie W.* v. *Commonwealth*, 419 Mass. 122, 125 (1994). However, whether or not the release of MacNeil in 1987 is too "remote" to constitute such an affirmative act involves the same factual considerations as the issue of

---

[9]On the limited record before us, we are in no position to consider, and our analysis does not turn on the correctness of, the Superior Court's determination that MacNeil was no longer subject to the jurisdiction of the parole board and could no longer be held in State custody. At this stage of the case, the plaintiffs' allegations are sufficient to keep the issue of foreseeability alive.

proximate causation. Again, this is a question inappropriate to decide at this embryonic stage of the case.

The order denying the defendants' motion to dismiss is affirmed.

*So ordered.*