Kent *v.* Commonwealth.

THOMAS R. KENT & another[1] *vs.* COMMONWEALTH & another.[2]

Middlesex. February 6, 2002. - July 15, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Civil,* Motion to dismiss, Interlocutory appeal. *Governmental Immunity. Massachusetts Tort Claims Act. Commonwealth,* Claim against, Liability for tort. *Negligence,* Proximate cause.

This court concluded that a public employer has a right to interlocutory review of the denial of its motion to dismiss based on a claim of immunity, even if the granting of the motion would not dispose of the entire case against it. [315-317]

A motion by the Commonwealth to dismiss the plaintiffs' claims of negligence based on the Commonwealth's immunity from suit under G. L. c. 258, § 10 (*j*), for all harmful consequences arising from its failure to act to prevent the violent or tortious conduct of a third person, should have been allowed where, as a matter of law, the decision of the Massachusetts parole board to release a violent prisoner to a deportation warrant of the Immigration and Naturalization Service was not the proximate cause of the plaintiffs' injuries nor the original cause of the situation that led to the infliction of the injuries eight years later. [317-322]

CIVIL ACTION commenced in the Superior Court Department on May 28, 1998.

A motion to dismiss was heard by *Ralph D. Gants,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Crispin Birnbaum,* Assistant Attorney General, for the defendants.

*Leonard H. Kesten* for the plaintiffs.

CORDY, J. In this case we hold that a public employer has a right to interlocutory review of the denial of its motion to dismiss based on a claim of immunity, even if the granting of

[1] Rebecca Kent, individually, and as parent and next friend of Dominic Kent, Patrick Kent, and Michael Kent.

[2] The Massachusetts parole board. We refer to both defendants collectively as the "Commonwealth" throughout the opinion.

the motion would not dispose of the entire case against it. We also conclude that the Commonwealth's motion to dismiss the plaintiffs' negligence claims should have been granted because, as a matter of law, the decision of the Massachusetts parole board to release a violent prisoner to a deportation warrant of the Immigration and Naturalization Service (INS) was not the proximate cause of the plaintiffs' injuries nor the original cause of the situation that led to their infliction eight years later.

1. *Background.* Officer Thomas R. Kent of the Leominster police department (Officer Kent) was shot and seriously wounded on September 15, 1995, by John J. MacNeil, a convicted murderer who had been serving a life sentence in the Massachusetts prison system until his parole in 1987 (see *Commonwealth* v. *MacNeil*, 23 Mass. App. Ct. 1022 [1987]). Officer Kent, his wife, and his three children brought suit under the Massachusetts Tort Claims Act, G. L. c. 258, against the Commonwealth, alleging that the parole board was grossly negligent in 1987 when it paroled MacNeil to the custody of the INS for deportation to Canada, and that the mishandling of MacNeil's case persisted in 1995 when the parole board failed to reestablish parole jurisdiction after learning that he had returned to the United States and had been released from INS custody. The Kents argue that these acts and omissions foreseeably resulted in the shooting of Officer Kent.

a. *The complaint.* The facts alleged in the complaint, which we take as true for these purposes, may be summarized as follows. In 1969, MacNeil was sentenced to life in prison on two charges of murder in the second degree. Twice during his incarceration, MacNeil escaped and committed further crimes. During one of these escapes, he fled to Canada where he was recaptured. While in prison, MacNeil obtained explosives and injured himself while attempting to manufacture pipe bombs.

MacNeil was denied parole when he first became eligible in 1985 and again in 1986. In its denial dated July 14, 1986, the parole board noted that MacNeil was still in maximum security and lacked a prerelease plan and a solid record of accomplishment while incarcerated. Even though MacNeil's circumstances remained unchanged, on January 22, 1987, a panel of the parole board recommended that he be paroled to a deportation warrant

that the INS had lodged against him.[3] The parole board subsequently paroled MacNeil to the custody of the INS for deportation to Canada, with two conditions: that he report by mail to the parole board on a quarterly basis and that he not return to the United States. On April 28, 1987, he was deported to Canada.

MacNeil returned to Massachusetts and was arrested on September 11, 1987, for violating his parole. However, on January 14, 1988, a judge in the Superior Court, ruling on a writ of habeas corpus, held that by paroling MacNeil to the INS, the parole board had surrendered MacNeil to the authority of the INS and no longer had jurisdiction over him. As a result of this ruling, MacNeil was transferred from State custody to the INS, which deported him to Canada a second time.

MacNeil again returned to the United States and the INS took him into custody on July 12, 1994, holding him without bail. However, the INS released him on June 7, 1995, after determining that he was, in fact, a United States citizen. Two days later, MacNeil was arraigned in the West Roxbury Division of the District Court Department for violating a protective order that his wife had obtained against him. Although initially held in custody, MacNeil eventually was released by the District Court judge.

In June, 1995, the parole board decided to attempt to regain custody over MacNeil, but it did nothing to reassert jurisdiction over him before he shot Officer Kent on September 15, 1995. On that day, Officer Kent and his partner responded to a call regarding a suspicious person at a private residence in Leominster. When the officers arrived on the scene, MacNeil emerged from the garage of the residence, firing two guns. Officer Kent was struck in the chest, but returned fire and killed MacNeil.

b. *The Commonwealth's motion to dismiss.* The Commonwealth challenged the complaint on two grounds. The first ground, lack of proximate causation, was directed at the complaint as a whole. The Commonwealth argued that, as a matter of law, events occurring after MacNeil's parole in 1987

---

[3]It appears from the record that the INS issued the warrant in 1979.

broke any chain of causation and ended its duty of care. The second ground, immunity from suit, was asserted only insofar as the Kents' claims were based on the Commonwealth's failure to reestablish parole jurisdiction over MacNeil in 1995. The Commonwealth relied on the so-called statutory public duty rule, G. L. c. 258, § 10 (*j*), for the proposition that it is immune from claims of "failure to act" unless a plaintiff can prove that the Commonwealth's affirmative conduct "originally caused" the "condition or situation" that led to the harm. See *Brum* v. *Dartmouth*, 428 Mass. 684, 692-696 (1999).[4] The Commonwealth contended that the Kents could not meet this requirement because the release of MacNeil in 1987 was too remote as a matter of law to be the "original cause" of the situation — MacNeil's armed presence in Leominster in 1995 — which led to the Kents' harm. Both of these grounds for dismissal were rejected by the Superior Court judge,[5] and the Commonwealth appealed.

The Appeals Court affirmed the Superior Court judge's order, *Kent* v. *Commonwealth*, 52 Mass. App. Ct. 28 (2001), and also concluded that the Commonwealth did not have a right to an interlocutory appeal of its immunity claim because the immunity defense was "neither dispositive of the case as a whole, nor collateral to the rest of the controversy as required by the doctrine of present execution."[6,7] *Id.* at 33. We granted the Commonwealth's application for further appellate review.

2. *Discussion.*

a. *Interlocutory appeal.* In *Brum* v. *Dartmouth*, *supra* at 688,

---

[4]General Laws c. 258, § 10 (*j*), provides, with enumerated exceptions not relevant here, that sovereign immunity is not waived under the Massachusetts Tort Claims Act as to "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer."

[5]A third ground of dismissal, that the plaintiffs' claims fell within G. L. c. 258, § 10 (*b*), the "discretionary function" exception to Tort Claims Act liability, has not been advanced on appeal by the Commonwealth.

[6]The doctrine of present execution is a limited exception to the finality rule. It permits the immediate appeal from an interlocutory order if the order will interfere with rights in a way that cannot be remedied on appeal from a final judgment. See *Maddocks* v. *Ricker*, 403 Mass. 592, 597-600 (1988).

[7]Because the parties had briefed the issues, the Appeals Court exercised its discretion and addressed the Commonwealth's contention that its motion to

we held that an order denying a motion to dismiss based on immunity from suit enjoys the benefit of the present execution rule because it is a final order that meets the criteria for immediate appeal. In so holding, we noted the importance of determining immunity issues early to protect government agencies and public officials from unwarranted disruption and harassing litigation, and recognized that the right to immunity from suit is effectively "lost as litigation proceeds past motion practice," *id.*, quoting *Puerto Rico Aqueduct & Sewer Auth.* v. *Metcalf & Eddy, Inc.*, 506 U.S. 139, 145 (1993), and is not adequately vindicated "if an order denying it were not appealable until the close of litigation." *Brum* v. *Dartmouth, supra*, citing *Matthews* v. *Rakiey*, 38 Mass. App. Ct. 490, 493 (1995).

There is nothing in the *Brum* case that supports limiting interlocutory review to cases where the immunity issue alone would resolve the entire case. To the contrary, our holding relied on a line of decisions, including *Breault* v. *Chairman of the Bd. of Fire Comm'rs of Springfield*, 401 Mass. 26, 30 (1987), cert. denied sub nom. *Forastiere* v. *Breault*, 485 U.S. 906 (1988), in which interlocutory orders were deemed final, and therefore appealable, despite the fact that they did not resolve the entire case. *Brum* v. *Dartmouth, supra* at 687. See *Maddocks* v. *Ricker*, 403 Mass. 592, 600 (1988) (appeal from an order disqualifying attorney); *Borman* v. *Borman*, 378 Mass. 775, 779-780 (1979) (same). In the *Breault* case, only two of the four counts in the plaintiff's complaint were defended on the basis of immunity under Federal and State law, and we upheld the defendant's right to an interlocutory appeal from the denial of immunity on those two counts. *Breault* v. *Chairman of the Bd. of Fire Comm'rs of Springfield, supra* at 29-31. In concluding that the appeal was appropriate, we specifically noted that "even where part of an action remains undetermined, we treat an order as final if it is to be executed presently with the result that any later appeal would be futile." *Breault* v. *Chairman of the Bd. of Fire Comm'rs of Springfield, supra* at 30. Thus, consistent with *Breault*, the Commonwealth's right to

dismiss should have been allowed. *Kent* v. *Commonwealth*, 52 Mass. App. Ct. 28, 34 (2001).

interlocutory review of the denial of its motion to dismiss based on immunity is not dependent on whether allowance of the motion would completely end the litigation.

As to whether the immunity defense was "collateral to the rest of the controversy as required by the doctrine of present execution," *Kent* v. *Commonwealth, supra* at 33, we conclude, as did the United States Supreme Court, *Mitchell* v. *Forsyth,* 472 U.S. 511, 527-529 (1985), that the denial of a motion to dismiss on immunity grounds is always collateral to the rights asserted in the underlying action because it "is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated . . . even though a reviewing court must consider the plaintiff's factual allegations in resolving the immunity issue." Therefore, we hold that the denial of a claim of immunity is appealable by a public employer, on an interlocutory basis, as a matter of right.

b. *Immunity under G. L. c. 258, § 10* (j). We next consider whether the judge properly denied the motion to dismiss based on immunity grounds, cognizant that a motion to dismiss should only be allowed if "it appears certain that the complaining party is not entitled to relief under any state of facts which could be proved in support of his claim." *Spinner* v. *Nutt,* 417 Mass. 549, 550 (1994), quoting *Logotheti* v. *Gordon,* 414 Mass. 308, 310-311 (1993). The sufficiency of a plaintiff's claims must be examined in light of the principles that the allegations of the complaint, as well as such inferences that may be drawn in the plaintiff's favor, are to be taken as true. *Eyal* v. *Helen Broadcasting Corp.,* 411 Mass. 426, 429 (1991), and cases cited.

The Commonwealth is immune from suit under G. L. c. 258, § 10 (j), for all harmful consequences arising from its failure to act to prevent the violent or tortious conduct of a third person, unless it "originally caused" the "condition or situation" that resulted in the harmful consequence.[8] Since its approval in 1994, St. 1993, c. 495, § 57, we have described § 10 (j) as a "statutory public duty rule providing governmental immunity,"

---

[8] In *Brum* v. *Dartmouth,* 428 Mass. 684, 692, 696 (1999), we grappled with the "interpretive quagmire" of G. L. c. 258, § 10 (j), concluding that the "originally caused" language refers to the "condition or situation" in which

*Carleton* v. *Framingham*, 418 Mass. 623, 627 (1994), the purpose of which is to "provide some substantial measure of immunity from tort liability to government employers." *Brum* v. *Dartmouth, supra* at 695. We have also construed the "original cause" language to mean an affirmative act (not a failure to act) by a public employer that creates the "condition or situation" that results in harm inflicted by a third party. *Id.* We have not had occasion to consider the nature of the relationship between the affirmative act and the "condition or situation" that would bring it within the ambit of the "originally caused" language, thereby extinguishing the Commonwealth's immunity from suit. This issue has been described as the "most difficult issue posed" by the amendments to the Tort Claims Act. Glannon, Liability for "Public Duties" Under the Tort Claims Act: The Legislature Reconsiders the Public Duty Rule, 79 Mass. L. Rev. 17, 26 (1994).

The plaintiffs contend that the Commonwealth is not immune from suit for its failure to reassert jurisdiction over MacNeil in 1995 (and thereby prevent the harm to Officer Kent) because the decision to parole MacNeil to the INS deportation warrant was the "original[] cause[]" of the "condition or situation" that resulted in the shooting. The Commonwealth responds that the "condition or situation" that caused the harm was MacNeil's armed presence in Leominster on the day of the shooting, a situation that it did not create and that is too remote from the parole decision to have been "caused" by it as a matter of law. There can be little doubt that the 1987 parole decision contributed in some measure to MacNeil's freedom in 1995, at least in the sense that the parole board released him from State confinement when he might otherwise still be serving his life sentence. We must decide whether the parole board's role in MacNeil's freedom is enough to qualify as the original cause of the condition or situation that resulted in the shooting. We conclude that it is not.

To interpret the language of § 10 (*j*) to encompass the decision of the parole board as the original cause of the dangerous situation that developed in Leominster eight years later would

the harmful consequences occurred, not to the "violent or tortious conduct" of the third party who inflicted them.

be to "adopt an interpretation of the statute that construes the words 'originally caused' so broadly as to encompass the remotest causation and preclude immunity in nearly all circumstances." *Brum* v. *Dartmouth, supra* at 695. This would eviscerate the principle purpose of § 10 (*j*). *Id.* at 693. In order for a public employer's affirmative act to be the "original cause" of a "condition or situation" that results in harmful consequences to another from "the violent or tortious conduct of a third person," we hold that the act must have materially contributed to creating the specific "condition or situation" that resulted in the harm.[9] Acts that merely result in individuals living or traveling in society are too remote as a matter of law to be the original causes of specific conditions or situations that may arise years later as the result of their societal interactions. People who have committed crimes or other dangerous acts are released from State and county institutions every day. Some of them will commit new offenses or engage in other dangerous conduct after they are released. It would be neither practical nor sensible to conclude that the decision to release such an individual from custody is the "original cause" of all future conditions or situations in which that individual might inflict harm on someone. See *Commonwealth* v. *Williams*, 427 Mass. 59, 62 (1998), quoting *Commonwealth* v. *A Juvenile*, 16 Mass. App. Ct. 251, 254 (1983) ("If the language of the statute is ' "fairly susceptible [of] a construction that would lead to a logical and sensible result" . . . we will construe [it] so "as to make [it an] . . . effectual piece[] of legislation in harmony with common sense and sound reason" ' ").

There is no connection alleged between MacNeil's armed confrontation with police in Leominster in 1995 and the Commonwealth's affirmative acts other than the parole board's deci-

---

[9]Several cases that predate § 10 (*j*) are illustrative of the relationship between affirmative acts and specific conditions or situations resulting in harm that might fall within these parameters: the recommendation of a convicted rapist for employment in a trailer park that gave him access to keys of all of the units of potential victims in the park, *Bonnie W.* v. *Commonwealth*, 419 Mass. 122 (1994); the placement of an unstable mental patient in a rooming house that he subsequently set on fire, *Onofrio* v. *Department of Mental Health*, 408 Mass. 605 (1990), *S.C.*, 411 Mass. 657 (1992); and the hiring of a guidance counselor who subsequently abused his students, *Doe* v. *Blandford*, 402 Mass. 831 (1988).

sion to release him to the INS deportation warrant in 1987. In the absence of any closer connection, the Commonwealth is immune from suit under § 10 (*j*), as a matter of law, for any harmful consequences arising out of its failure to reassert jurisdiction over MacNeil in 1995.

c. *Proximate cause.* When all of the issues raised in an appeal of the denial of immunity present questions of law, judicial economy is served by reaching the nonimmunity issues as well as the immunity issues. See, e.g., *Brum* v. *Dartmouth, supra* at 688-690. We therefore turn to the issue of proximate cause on the plaintiffs' claims of gross negligence.[10] Proximate cause may be determined as a question of law when there is no dispute as to the effect of the facts established. *Stamas* v. *Fanning,* 345 Mass. 73, 76 (1962).

"[O]ne cannot be held liable for negligent conduct unless it is causally related to injury of the plaintiff."[11] *Wainwright* v. *Jackson,* 291 Mass. 100, 102 (1935). See *Glidden* v. *Maglio,* 430 Mass. 694, 696 (2000) (causation "is an essential element" of proof of negligence). In addition to being the cause in fact of the injury, the plaintiff must show that the negligent conduct was a proximate or legal cause of the injury as well. See *Wallace* v. *Ludwig,* 292 Mass. 251, 254 (1935). Whether negligent conduct is the proximate cause of an injury depends not on factual causation, but rather on whether the injury to the plaintiff was a foreseeable result of the defendant's negligent conduct. *Jesionek* v. *Massachusetts Port Auth.,* 376 Mass. 101, 105 (1978). In this respect, proximate cause prevents liability from being based on factual causation alone. The definition or scope of proximate cause (or foreseeable result) is in turn "based on considerations of policy and pragmatic judgment." *Poskus* v.

---

[10]The Commonwealth does not contend on appeal that the plaintiffs' claim of liability based on gross negligence in the 1987 parole decision of MacNeil is barred by immunity. Under G. L. c. 258, § 10 (*i*), the Commonwealth is immune from suit for claims arising out of parole decisions unless those decisions are the product of gross negligence. The Commonwealth concedes that the plaintiff's pleadings adequately allege gross negligence.

[11]To be held liable for injuries arising from its negligent conduct, the Commonwealth must also have owed a duty of care to the plaintiff. Because G. L. c. 258, § 10 (*i*), permits actions against the Commonwealth for "gross negligence" in the parole of prisoners, we assume that the Commonwealth had a duty of care, at least with regard to Kent.

*Lombardo's of Randolph, Inc.*, 423 Mass. 637, 640 (1996). If a series of events occur between the negligent conduct and the ultimate harm, the court must determine whether those intervening events have broken the chain of factual causation or, if not, have otherwise extinguished the element of proximate cause and become a superseding cause of the harm. *Jesionek* v. *Massachusetts Port Auth., supra.*

The Commonwealth argues that, even based on a broad reading of the complaint and all of its allegations, the parole board's decision in 1987 cannot, as a matter of law, be the proximate cause of the plaintiffs' harm that occurred in 1995. We agree, but for reasons somewhat different from those proffered by the Commonwealth.

One of the intervening events between the decision to parole MacNeil and the shooting of Officer Kent was the transfer of custody and jurisdiction over MacNeil to the INS for the purpose of effectuating his deportation under the INS warrant. The transfer of MacNeil to the Federal law enforcement agency charged with the responsibility for, and exclusive jurisdiction over, the deportation of aliens shifted the duty to prevent harm from MacNeil's presence in Massachusetts from the Commonwealth to the INS. By assuming control of MacNeil under its warrant, the INS assumed the risks created by his release to that warrant. Because the duty to prevent harm, and the risk created by MacNeil's release, were transferred to a law enforcement agency that could lawfully be relied on to perform safely the responsibilities it had assumed, the element of proximate cause, which might otherwise have linked MacNeil's release on parole with his harmful conduct in Leominster, was extinguished. Subsequent action by the INS releasing MacNeil in Massachusetts became a superseding cause of the harm he inflicted, relieving the Commonwealth of liability as a matter of law.[12] Restatement (Second) of Torts § 452 (2) (1965) ("where . . . the duty to prevent harm to another threatened by the

---

[12]While we have grave doubts about the correctness of the Superior Court judge's decision on MacNeil's writ of habeas corpus, which was not appealable by the Commonwealth, it is nonetheless instructive on this point. If the judge had denied the writ, MacNeil's parole would have been revoked, thereby breaking the chain of factual causation between the negligent act of the initial parole decision and any subsequent injury that might have occurred if and

actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause"). See 1 D.B. Dobb, Torts § 194, at 484 (2001) (if actor B "assumes control of the risk [created by A] and can reasonably be expected to provide adequate safety . . . responsibility may be shifted to B, thus relieving A of liability as a matter of law").

The Commonwealth had no authority to challenge or control the unanticipated determination by the INS in 1995 that Mac-Neil was a United States citizen no longer subject to deportation. It was this INS decision that released MacNeil to the streets of Massachusetts in 1995, and, in this respect, was the efficient cause of his presence in Leominster on September 15. As such, the INS action constituted a superseding cause of the harm that followed.

Although deciding the issue of causation on a motion to dismiss may present the exception rather than the rule,[13] in light of the intervening events present and acknowledged in the complaint, there is no set of facts that the plaintiffs could prove to support a conclusion that the Commonwealth's decision to parole MacNeil to the INS deportation warrant in 1987 was the proximate cause of Kent's injuries in 1995. The Commonwealth's motion to dismiss the claims for negligence should have been allowed.

3. *Conclusion.* The judgment is reversed and the case is remanded to the Superior Court for entry of a judgment dismissing the complaint.

*So ordered.*

when MacNeil was later released from his sentence. In granting the writ, the judge concluded, as a matter of law, that the parole decision had shifted superior and exclusive jurisdiction over MacNeil to the INS, which had "clear and unequivocal statutory control" of him as an alien unlawfully reentering the United States, and which was required by Federal law to deport him.

[13]Compare *Mullins* v. *Pine Manor College*, 389 Mass. 47, 58 (1983), citing *Zezuski* v. *Jenny Mfg. Co.*, 363 Mass. 324, 327 (1973) ("[t]he question of causation is generally one for the jury"), and *Coughlin* v. *Department of Correction*, 43 Mass. App. Ct. 809, 817 (1997) (reversing allowance of motion to dismiss negligence claims), with *Stamas* v. *Fanning*, 345 Mass. 73, 76 (1962) ("when all facts are established and there can be no reasonable difference as to the effect of them, causation becomes a question of law").