Macdonald, D. Lloyd, J.
Before the Court are two summary judgment motions filed by the City of Attle-boro defendants (the “City”), the first with regard to the plaintiffs’ claims and the second with regard to the City’s cross claim for indemnification against the defendant Haskell Bus Service, Inc. (“Haskell”). The City also moves for separate and final judgment. Haskell has itself brought a summary judgment motion as to the plaintiffs’ claims. The Court ALLOWS the City’s summary judgment motion versus the plaintiffs and its motion for indemnification against Haskell. The Court DENIES Haskell’s motion. The Court also DENIES the City’s motion for separate and final judgment.
Facts Common to the Three Motions
On October 4, 2005 the plaintiff Chelsea Enos (“Chelsea”), who was six years old at the time and attending first grade in the Attleboro public schools, was severely injured when she was struck by an automobile as she was walking home with her 13-year-old sister, Ashley Silva (“Ashley”). Shortly before, Ashley had picked up Chelsea from the school bus operated by Haskell.
Chelsea was supposed to have been dropped off at 4 p.m. at the designated stop near her home, but the Haskell bus came early, and when no one was at the stop to meet Chelsea, the bus driver kept Chelsea on board and continued her route. Several minutes later with Ashley having arrived at the designated stop and found that the bus had come and gone, Ashley and a friend walked up the street and soon noticed the bus. *8 The Haskell driver, knowing that Ashley was Chelsea’s sister, allowed Chelsea to get off the bus and to be taken home by Ashley.
Although the point is disputed, the plaintiffs allege (and the Court accepts for purposes of the Ciiy’s motions) that the principal of Chelsea’s school, having been earlier informed that Chelsea had not been met at the designated stop, instructed the Haskell driver to discharge Chelsea into Ashley’s care at the location where Ashley had caught up with the bus. That location was a half mile and several minutes walk from the designated stop and was on the opposite side of the street from Chelsea’s and Ashley’s home. Accordingly, Ashley and Chelsea had to cross the street in order for Chelsea to get home.
As Ashley, Chelsea and Ashley’s friend approached the location on the street opposite the most direct route to their home, Chelsea allegedly ran into the street and was struck by the vehicle driven by the defendant Ann Jarosz (“Jarosz”). Although the point is disputed, the State Police investigation of the accident concluded that Jarosz “had no time to take evasive action.”
The Ciiy’s Motion as to the Plaintiffs
The Ciiy moves for summary judgment on the basis that it is immune from suit under the Massachusetts Tort Claims Act pursuant to the statutory public duty rule of G.L.c. 258, §10(j) and the discretionary function rule of G.L.c. 258, § 10(b). The City also submits that plaintiffs’ presentment letter, as required by G.L.c. 258, §4, was deficient as a matter of law and that Chelsea’s mother’s consortium claim is not cognizable against public entity defendants.
The Court denies the Ciiy’s motion as it pertains to presentment and consortium on account of both issues having been addressed and rejected in the context of the City’s earlier motion to dismiss. Thus, the merits of both are subject to the law of the case. The Court denies the motion as to the discretionary function argument because the conduct complained of did not involve “planning or policy making.” Stoller v. City of Lowell 412 Mass. 139, 141 (1992). See also Brum v. Dartmouth, 428 Mass. 684, 690 (1999). However, the Court finds the Ciiy’s G.L.c. 258, §10(j) argument to be persuasive. Thus, as noted, the City’s summary judgment motion is allowed on that basis.
Discussion
G.L.c. 258, §10(j) provides public entity immunity as to “any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.” As to this statutory language, Justice Freed in Brum v. Dartmouth noted that ‘To say that §10(j) presents an interpretive quagmire would be an understatement. The language is convoluted and ambiguous . . .” 428 Mass, at 692. Nevertheless, by virtue of the court’s opinion in Brum and subsequent SJC and Appeals Court decisions, there is now substantial clarity as to the application of 10(j)’s principles.
In the Brum case a Dartmouth high school student was killed by three assailants on the premises of the high school. On behalf of the student’s estate, the plaintiff parent alleged that the school administration had been forewarned as to the intentions of the three assailants but did nothing. Thus, the claim asserted that the negligent failure of the town representatives to act had caused the loss of the child’s life. “The principal purpose of [§ 10(j)],” the Court held, “must be taken to be announced in its opening clause: to exclude liability for ‘an act or failure to act to prevent or diminish’ certain ‘harmful consequences.’ ” Id. The Court continued, “We take the ‘originally caused’ clause to modify ‘condition or situation’ .'. .” Accordingly, the Court dismissed the parent’s claim because the complained-of conduct by the school officials was in response to the “condition or situation” presented by the prospective assailants’ threat and was thus immune from suit.[1]
This interpretation of §10(j) was reaffirmed in Kent v. Commonwealth, 437 Mass. 312, 319 (2002), where claims as to the Parole Board’s negligence in releasing a convicted murderer who later killed a police officer were dismissed. “In order for a public employer’s affirmative act to be the ‘original cause’ of a ‘condition or situation’ that results in harmful consequences to another from the ‘violent or tortious conduct of a third person,’ we hold that the act must have materially contributed to creating the specific ‘condition or situation’ that resulted in the harm.” Id.
Here in the case before the Court, whether one views the “condition or situation” leading to Chelsea’s injuries as the circumstance of the failure of someone to have been at the designated stop to pick her up or Jarosz’s vehicle striking Chelsea as Chelsea allegedly ran into the street, no reasonable view of the evidence in the record can support the conclusion that the Attleboro officials “materially contributed” to either.
The recent Appeals Court decision in Anderson v. City of Gloucester, 75 Mass.App.Ct. 429 (2009), is consistent with this analysis. There, the family of person who had been mistakenly identified by a Gloucester police officer as having been killed in a fire sued for emotional distress damages, citing the officer’s negligence. Judge McHugh for the Court wrote that G.L.c. 258, §10(j) immunity is a “legislative recognition that public employees who respond to emergencies are called upon to act swiftly, often without the time for investigation and deliberate reflection available in other circumstances. As a consequence, the opportunity for mistakes is high, and municipal exposure to liability for those mistakes creates both an undesirable disincentive to action and the possibil *9 ity of enormous claims on the public purse.” Id. at 434. The Court continued: “§10(j) does not provide immunity for success. Indeed, no immunity is needed for acts that succeed, and §10(j) provides the immunity for acts that fail. [The police officer’s] act is, therefore, an act the statute covers.” Id. at 435.
Similarly (and assuming arguendo that the City’s response to Chelsea’s not having been picked up at the designated spot may have been negligent), it is the purpose of § 10(j) to provide immunity for responses by public employees to emergent circumstances of that kind. Thus, all claims against the City must be dismissed.
The City’s Motion as to Haskell
The City moves for summaiy judgment as to its contractual claim for indemnification by Haskell for all expenses in connection with the case, including the cost of defense as to the plaintiffs’ allegations of affirmative negligence by the City. The City principally relies on the text of Section 3.1 of the operative contract’s “Specifications.” Section 3.1 provides in material part: “The Contractor shall hold harmless and indemnify the City of Attleboro, its officers, employees and agents from and against all liability ... of any nature whatsoever . . . which arise out of or are connected with, or are claimed to arise out of or be connected with any of the transportation services provided to the Cify . . . The foregoing provision shall not be deemed to be released, waived or modified by reason of any insurance provided hereunder by the Contractor.” (Emphasis added.)
Haskell responds that the agreement cannot be reasonably interpreted to require indemnification for the alleged negligence of the City itself, in particular the tragic repercussions of what the plaintiffs allege to have been the express instructions of the City’s school principal that Chelsea be let off the bus at a place other than her designated stop.
“[T]he construction of an unambiguous written contract . . . [is] a pure question or law” for the Court. Daley v. J.F. White Contr. Co., 347 Mass. 285, 288 (1964), quoting from Taylor v. Gowetz, 339 Mass. 294, 300 (1959). Indemnity provisions “are to be fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished.” Shea v. Bay State Gas Co., 383 Mass. 218, 222 (1981).
It is difficult to imagine an indemnification clause that is more inclusive than that provided here. Haskell agreed to “indemnify . . . against all liability . . . of any nature whatsoever. . . which arise out of or are connected with, or are claimed to arise out of or be connected with any of the transportation services provided to the City.” The Court sees no issue as to whether the present claims arose out of such services. Further, by all appearances, the contract was executed between two sophisticated parties. And “[indemnification of a tortfeasor for damages caused by its own negligence is not illegal, and is a question of the intent of the parties.” Post v. Belmont Country Club, Inc., 60 Mass.App.Ct. 645, 651 (2004), citing Ortolano v. U-Dryvit Auto Rental Co., 296 Mass. 439 (1937). And in Massachusetts, in contrast to the law in a number of other jurisdictions, “there is nothing to require strict construction of the clause [purporting to indemnify the tortfeasor] under general contract rules . . .” Id.
Haskell argues that there is ambiguity between different provisions in the agreement, some of which reference indemnification in connection with services specifically to be provided by Haskell. “However, an ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other’s.” Jefferson Ins. Co. of N.Y. v. Holyoke, 23 Mass.App.Ct. 472, 475 (1987).
As a general matter, “[a] contract should be construed to give it effect as a rational business instrument and in a manner which will carry out the intent of the parties.” Lewis v. Chase, 23 Mass.App.Ct. 673, 677 (1987). Here, the expansive text quoted above appears in the specific section of the agreement titled, “Indemnification and Insurance.” Further, the structure of the contract to provide blanket indemnification to the City in conjunction with the obligation of Haskell to secure substantial insurance coverage with the City as a named insured was a reasonable means to allocate risks and obligations between the parties in the context of a municipal service with many inherent risks. As such, the City’s interpretation, supported as it is by unambiguous text, is consistent with the apparent intent of the parties, and, as so interpreted, it comprises a “rational business instrument.” Accordingly, the City’s contract with Haskell must be enforced by its terms to provide complete indemnification to the City.
Haskell’s Motion as to the Plaintiffs
The essence of the plaintiffs’ theory against Haskell is that Haskell’s core contractual obligation was to transport safely Attleboro’s students and that by its driver’s dropping Chelsea off a half mile from her designated stop at a location where it would be necessary for the six-year-old to cross a busy street to get home unreasonably placed Chelsea at risk, with tragic foreseeable results. The plaintiffs cite multiple “safety regulations” allegedly violated by Haskell’s driver making the alleged unilateral decision to leave Chelsea on the street with her older sister.
Haskell responds that Chelsea’s mother authorized Ashley to pick up her younger sister, that the school principal instructed the driver to leave Chelsea with Ashley, that there was nothing inherently dangerous about the street where the accident occurred and that, in any event, Chelsea was placed by Haskell’s actions in no different situation than that of the many Attle-boro students who lived within a mile and a half of *10 their schools for whom no bus transportation was provided by the City. Haskell also submits that the plaintiffs cannot prove causation because of the su-perceding event of Ashley having allegedly run into the street and then being struck by Jarosz’s vehicle.
As plausible as Haskell’s defense appears, material issues of fact remain in the summary judgment record, and, accordingly Haskell’s motion must be denied.
ORDER
The City’s motions for summary judgment against the plaintiffs and Haskell are ALLOWED. Haskell’s motion for summary judgment is DENIED. The City’s motion for separate and final judgment is DENIED.

 Three justices concurred in Brum. For the three, Justice Ireland wrote that the result of the case was “unfortunate” but that the outcome was “constrained by the words of the statute.” Id. at 708. Justice Ireland concluded, “This entire matter is within the control of the Legislature, which, I hope, will act to impose an obligation on school districts, and to ensure that the restrictions in the Massachusetts Tort Claims Act do not apply to these cases.” Id. at 710. The text of § 10(j), however, has remained unchanged to this date.