JAMES E. PARKER *vs.* CHIEF JUSTICE FOR ADMINISTRATION
AND MANAGEMENT OF THE TRIAL COURT & others.[1]

No. 05-P-1141.

Bristol. March 21, 2006. - August 18, 2006.

Present: COWIN, DREBEN, & MILLS, JJ.

*Trial Court,* Probation officers, Chief Administrative Justice. *Negligence,*
Public officer. *Chief Justice for Administration and Management.*
*Governmental Immunity. Massachusetts Tort Claims Act. Commonwealth,*
Claim against. *Emotional Distress.*

In an action brought against probation officers and the Chief Justice for
Administration and Management of the Trial Court (CJAM), in her official
capacity as the public employer of the probation officers, arising from the
erroneous service of an arrest warrant on the plaintiff, the plaintiff's claim
of vicarious liability on the part of the CJAM for the negligence of her
employees was barred by the provisions of G. L. c. 258, the Massachusetts
Tort Claims Act (Act), where any loss to the plaintiff was caused not by
the probation officers' erroneous identification of the plaintiff as the subject
of the warrant, but by the behavior of the police officers executing the
warrant [177-180]; further, the judge did not err in dismissing the plaintiff's
claims against the probation officers for reckless [180] or intentional
[180-181] infliction of emotional distress, where such claims were either
barred by the Act or based on allegations that failed to state a claim.

CIVIL ACTION commenced in the Superior Court Department on
December 13, 2002.

A motion to dismiss was heard by *Richard T. Moses,* J.

*Michael M. Burke* for the plaintiff.

*Timothy R. McGuire,* Assistant Attorney General, for the
defendants.

COWIN, J. At the request of the defendant probation officers,
Thomas Gibney and Garrett A. Madison (collectively, probation
officers), Attleboro police officers served on the plaintiff, James
E. Parker, an arrest warrant in connection with an alleged proba-

[1]Thomas Gibney and Garrett A. Madison.

tion violation. Knowing that he was not a probationer, and observing that the person named in the warrant was James *M.* Parker, the plaintiff attempted unsuccessfully to explain to the police officers that they had the wrong man. The situation disintegrated into a physical confrontation which the probation officers watched but in which they did not participate. The plaintiff was arrested and taken to a police station where cooler heads prevailed and it was determined that the plaintiff in fact was not the probationer sought. He was, however, charged with assault and battery on a police officer, resisting arrest, and disturbing the peace, and was held for two days until a friend posted bail.

The plaintiff asserted claims against the three police officers[2] who effected the arrest of violation of 42 U.S.C. § 1983; violation of G. L. c. 12, § 11I; assault and battery; and intentional infliction of emotional distress, together with a related claim of negligence against the city of Attleboro (city). The city and its police officers settled with the plaintiff, and those claims do not figure in this appeal. In addition, the plaintiff sued the probation officers for violation of 42 U.S.C. § 1983; violation of G. L. c. 12, § 11I; and intentional infliction of emotional distress. Finally, the plaintiff alleged negligence on the part of defendant Chief Justice for Administration and Management (CJAM) in her official capacity as the public employer of the probation officers.

On motion of the CJAM and the probation officers, a judge of the Superior Court dismissed all of the counts asserted against these defendants. The plaintiff filed a timely notice of appeal from the judgment of dismissal, subsequently confining his appeal to the negligence count against the CJAM and the intentional infliction of emotional distress counts against the probation officers. We conclude that the claims against the CJAM are barred by the provisions of G. L. c. 258, the Massachusetts Tort Claims Act (Act), and that the claims against the probation officers are either barred by the Act or based on allegations that do not state a claim of intentional infliction of emotional distress. Accordingly, we affirm.

1. *Facts.* Because the CJAM and the probation officers

---

[2]Kyle Heagney, John Hynes, and Richard Woodhead.

prevailed on a motion to dismiss, we take the allegations of the complaint, together with such inferences as may be drawn in the plaintiff's favor, as true. See *Eyal* v. *Helen Bdcst. Corp.*, 411 Mass. 426, 429 (1991); *Jacome* v. *Commonwealth*, 56 Mass. App. Ct. 486, 487 (2002). On the morning in question, the probation officers, accompanied by Attleboro police Officer Kyle Heagney, sought to serve a default warrant issued by the Taunton Division of the District Court Department.[3] The warrant named James M. Parker as the party sought, but contained no other identifying information. As probation officers, Gibney and Madison had access to files containing identifying information on probationers and, in this case, may have had a sketch of the subject of the warrant, a white male. The probation officers, however, had made no effort to examine the files to ascertain a visual description of the subject person.

The probation officers and Heagney proceeded erroneously to the apartment of the plaintiff, a black male approximately twenty-five years older than the subject of the warrant. The officers rang the plaintiff's doorbell at 6:10 A.M. and informed him that he was under arrest. On being told that the arrest warrant had issued from the Taunton Division of the District Court Department in connection with an alleged probation violation, the plaintiff responded that he was not wanted by the District Court and that there had to be a mistake. With Heagney increasingly insistent, the plaintiff agreed to accompany him and the probation officers to the police station.

Because at that hour the plaintiff was clad in only a bathrobe, he asked that he first be allowed to dress. Heagney refused and the plaintiff alleges that, when he nevertheless reached for a shirt and trousers, Heagney grabbed his arm. The plaintiff repeated that he was not subject to probation, told Heagney that his name was James *E.* Parker, offered identification, and requested that the probation officers check his name for warrants. The probation officers declined and stood by as Heagney threw the plaintiff against a wall, punched him, and told him to "shut up." In response to a request by Heagney for

---

[3]Probation officers are not authorized to serve arrest warrants, see G. L. c. 276, § 85, and while not expressly alleged, it may be inferred that the probation officers sought the assistance of the local police.

assistance, Attleboro police Officers John Hynes and Richard Woodhead arrived at the apartment. The plaintiff asked if he could put on his shoes, and Hynes shouted, "Nigger get on the floor," sprayed the plaintiff with mace, and struck the plaintiff with the mace can. The three police officers continued to batter the plaintiff as the probation officers stood by, eventually handcuffing the plaintiff and dragging him into a police cruiser. At the station, the police determined that they indeed had arrested the wrong person, but filed criminal charges arising out of the altercation in the plaintiff's apartment.

2. *Negligence claim.* In the Superior Court, the plaintiff's claim of negligence on the part of the CJAM was based on two theories: first, that the CJAM was directly negligent in failing to establish and implement a system that would prevent or reduce the erroneous service of warrants for probation violations; and second, that the CJAM was vicariously responsible for the negligent service of the warrant by her employees, the probation officers. The judge ruled that the design of a system governing the service of warrants is a discretionary function, and that a claim against the CJAM for negligence in connection therewith is barred by G. L. c. 258, § 10(*b*).[4] The plaintiff expressly has waived his appeal with respect to this claim.

The judge did not address the plaintiff's second contention, i.e., that the CJAM was vicariously liable for the negligence of her employees in serving the warrant. The CJAM argues that the plaintiff did not assert the theory before the motion judge, thus explaining the absence of reference to it, and that consequently the plaintiff should not be permitted to press it for the first time on appeal. The claim, however, is set forth in the complaint. We pass the question of the extent to which it was argued below, preferring to dispose of it on the merits. Because a motion to dismiss is involved, and the question is thus whether

[4]General Laws c. 258, § 10, inserted by St. 1978, c. 512, § 15, provides in relevant part: "The provisions of sections one to eight, inclusive [permitting certain claims against public employers for negligence on the part of public employees], shall not apply to: . . . (*b*) any claim based on the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused."

the complaint states a claim upon which relief can be granted, see Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), we are able to decide irrespective of the treatment by the motion judge. If a correct decision below will be sustained even though the ground stated for it may be unsound, see *Doeblin* v. *Tinkham Dev. Corp.*, 7 Mass. App. Ct. 720, 722 (1979), it follows that a correct result will be sustained notwithstanding the absence of treatment below of a particular issue. We conclude that the plaintiff's claim of vicarious liability on the part of the CJAM is barred by applicable provisions of the Act.

"Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances."[5] G. L. c. 258, § 2, inserted by St. 1978, c. 512, § 15. The CJAM is the public employer of probation officers. See G. L. c. 276, §§ 98, 99. Her derivative liability under G. L. c. 258, § 2, is, however, limited by the provisions of G. L. c. 258, § 10, inserted by St. 1993, c. 495, § 57, which provides in relevant part: "The provisions of sections one to eight, inclusive, shall not apply to: . . . (*j*) any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer."

Thus, liability of the public employer is possible only where the loss is "originally caused" by that employer or his agent. See *Audette* v. *Commonwealth*, 63 Mass. App. Ct. 727, 732 (2005). "Original cause" as used in the statute means "an affirmative act (not a failure to act) by a public employer that creates the 'condition or situation' that results in harm inflicted by a third party." *Kent* v. *Commonwealth*, 437 Mass. 312, 318 (2002), quoting from *Brum* v. *Dartmouth*, 428 Mass. 684, 695 (1999). The relationship between the act of the public employer's agent and the resulting injury cannot be attenuated;

---

[5]The public employer is not liable for prejudgment interest or for punitive damages, and her exposure may not exceed $100,000. See G. L. c. 258, § 2.

it "must have materially contributed to creating the specific 'condition or situation' that resulted in the harm." *Kent* v. *Commonwealth, supra* at 319. "[T]he principal purpose of § 10(*j*) is to preclude liability [on the part of the public employer] for failures to prevent or diminish harm." *Jacome* v. *Commonwealth,* 56 Mass. App. Ct. at 489, quoting from *Brum* v. *Dartmouth, supra* at 696.

Recognizing these criteria, the plaintiff attempts to label as an "original cause" of the harm visited on him the probation officers' erroneous identification of the plaintiff as the subject of the warrant. We assume, for purposes of this opinion, that it was in fact negligent for the probation officers not to have ascertained the true identity of the probationer.[6] The question then becomes whether their negligence can be considered an affirmative act constituting "the 'original cause' of a 'condition or situation' that results in harmful consequences to another from 'the violent or tortious conduct of a third person.' " *Kent* v. *Commonwealth, supra.* Recognizing that a motion to dismiss may be allowed only where it is certain that the plaintiff "is not entitled to relief under any state of facts which could be proved in support of his claim," *Spinner* v. *Nutt,* 417 Mass. 549, 550 (1994), we are satisfied that the facts alleged by the plaintiff place his claim squarely within the parameters of G. L. c. 258, § 10(*j*).

Here, the negligence of the probation officers, as a matter of law, cannot be said to be an affirmative act that created a situation resulting in harm. The effect of § 10(*j*) is a limitation on the waiver of sovereign immunity so that the Commonwealth remains immune from tort claims except in those instances where the public employee's affirmative act "materially contributed to creating the specific 'condition or situation' that resulted in the harm." *Kent* v. *Commonwealth, supra.* Thus, for harm to be actionable, it must, as in any consideration of causation in a tort case, have been a foreseeable result of the negligence. *Id.* at 320.

---

[6]Whether a "special relationship" exists between probation officers and a probationer or, as in this case, one thought to be a probationer, is beside the point. We are assuming negligence on the part of the probation officers. The question is whether the CJAM is vicariously liable for it.

In the present case, the harm was precipitated directly by the behavior of the police officers. The probation officers neither caused, encouraged, participated in, nor facilitated the assault and battery. We reject the notion that it reasonably was foreseeable that their error would lead to tortious, perhaps criminal, acts on the part of police officers sworn to uphold the law. The absence of foreseeability would appear to doom the case under traditional causation concepts. See *Brum* v. *Dartmouth, supra* at 689. It plainly bars the plaintiff's action given the limitations of § 10(*j*). Likewise, pursuant to that subsection, the probation officers cannot be liable for a failure to intervene. See *Jacome* v. *Commonwealth, supra* at 490.[7]

3. *Intentional infliction of emotional distress claims.* The plaintiff asserts that it was error to dismiss his claims against the probation officers for intentional or reckless infliction of emotional distress.[8] With respect to intentional torts, including intentional infliction of mental distress, claims against the public employer are barred, see G. L. c. 258, § 10(*c*), but may be asserted against the public employee in his individual capacity. By contrast, where only ordinary negligence is alleged, claims may not be asserted against the public employee, but may be brought against the public employer. See G. L. c. 258, § 2. For purposes of G. L. c. 258, recklessness is considered negligent, rather than intentional, conduct. See *Forbush* v. *Lynn*, 35 Mass. App. Ct. 696, 699 (1994); *Jackson* v. *Milton*, 41 Mass. App. Ct. 908, 908-909 (1996). Accordingly, to the extent that the plaintiff alleges reckless behavior on the part of the probation officers, the claim is barred by the statute and dismissal was appropriate.

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct . . . ; (2) that the conduct was 'extreme and outrageous,' was 'beyond

[7]We need not discuss the alternative defenses asserted by the CJAM, see G. L. c. 258, § 10(*c*) and (*h*), because, for the reasons stated, there is no state of facts contemplated by the complaint that is legally sufficient to survive a defense under G. L. c. 258, § 10(*j*).

[8]The complaint alleges only intentional infliction of emotional distress. In his brief, the plaintiff argues that the facts alleged support findings of either intentional or reckless infliction. We consider both.

all possible bounds of decency[,]' and was 'utterly intolerable in a civilized community' . . . ; (3) that the actions of the defendant were the cause of the plaintiff's distress . . . ; and (4) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable man could be expected to endure it.' " *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 144-145 (1976). Here, the complaint alleges facts that constitute negligence, not purposeful behavior, on the part of the probation officers. Specifically, it is alleged that, among other things, the probation officers erred in identifying the subject of the warrant, and that they failed to intercede when the police battered the plaintiff. If, notwithstanding characterization of the acts as intentional, the complaint in fact alleges only negligent behavior, the claim is barred under G. L. c. 258, § 2. Compare *Schenker* v. *Binns*, 18 Mass. App. Ct. 404, 406 (1984).

The complaint, even read indulgently, fails in multiple respects. There is no allegation that the probation officers intended anything other than to bring about the arrest of an individual whom they believed to be a probation violator. In the circumstances, it cannot be said that they knew or should have known that tortiously inflicted emotional distress was a likely result. Their conduct may have been negligent; their mistake cannot be labeled "extreme and outrageous," "beyond all possible bounds of decency," or "utterly intolerable in a civilized community." Likewise, given that they legally were entitled not to interfere in the assault by the police, their decision not to involve themselves cannot, as a matter of law, be deemed outrageous or intolerable. Finally, for the reasons stated in section 2, *supra*, the actions of the probation officers were not the proximate or legal cause of the plaintiff's distress. See *Kent* v. *Commonwealth*, 437 Mass. at 320.

*Judgment affirmed.*