Fishman, Kenneth J., J.
The plaintiffs’ (“the Parsons”) claims arise from an altercation between plaintiff Nicholas Parsons (“Nicholas”) and the defendant Tyler Willette (“Tyler”) at the John W. Wynn Middle School in Tewksbury, Massachusetts (“Wynn School”), and the events preceding the altercation. The Parsons brought suit against the defendants Town of Tewksbury, Robert Ware, and Adam Colantuoni (collectively, “the defendants” or “the municipal defen *556 dants”) for negligence (Count I), intentional infliction of emotional distress (Count VI), and negligent infliction of emotional distress (Count VII); Nicholas brought suit against the defendants for violations of the Massachusetts Declaration of Rights Preamble and Articles I, X, XI, XI, and CVI (Count II); and the plaintiffs Gary and Donna Parsons brought suit against the defendants for loss of consortium (Count IX). The municipal defendants have moved to dismiss all claims against them pursuant to Mass.R.Civ.P. 12(b)(6). For the following reasons, the defendants’ Motion to Dismiss is ALLOWED.

BACKGROUND

The following facts are taken from the complaint and accepted as true. Nicholas and Tyler were students at the Wynn School at all times material. Tyler led a small group of boys who harassed and threatened other students. For some period of time prior to April 2006, Nicholas was a member of Tyler’s group. However, Nicholas disassociated himself from Tyler’s group after being designated “the dunce.” Nicholas told defendant Colantuoni, the school’s guidance counselor, that Tyler’s group had mistreated and harassed him. Colantuoni did not address the situation, failed to respond to Nicholas’ actual notice of Tyler’s misconduct, failed to deter student intimidation, failed to make clear the consequences of bullying, and failed to employ community resources to prevent violence.
One day at the Wynn School, Tyler told another member of his group, Brendan Weiss (“Brendan”), to “discipline” Nicholas by slamming his head with a book. Brendan did so, in front of a Wynn School teacher. The teacher sent Brendan to see defendant Ware, the school’s Behavior Management Facilitator. Ware called Nicholas to his office and asked the boys to apologize to each other, although Nicholas had not done anything to provoke Brendan. Nicholas’ mother, Donna Parsons, learned of the incident, and called the school to complain about Ware’s failure to discipline Brendan. In violation of School Committee policies, the school did not take additional measures to address Brendan’s violent behavior. As a result of the incident with Brendan, Mrs. Parsons decided to keep Nicholas home from school the Wednesday before April vacation.
Over April vacation, Tyler provoked two fist fights with Nicholas on the street near the Parsons’ residence. Both fights ended without a resolution, but neither fight resulted in injury to either boy. Upon returning to school after vacation, Tyler again tried to provoke a fight with Nicholas. A friend warned Nicholas that Tyler intended to hurt Nicholas if he did not agree to fight Tyler. Nicholas declined to fight Tyler. Then, in gym class, Tyler charged Nicholas during a game of kickball. The gym teacher asked the boys what was going on, but did not discipline Tyler. Because the school failed to respond to Tyler’s bullying and harassment, Nicholas decided to fight Tyler. Nicholas believed it was the only way to stop Tyler’s harassment.
The fight was originally to be held in the locker room of the Wynn School after class on April 26, 2006. The boys relocated the fight to a boys’ bathroom because the gym teacher was in the locker room at the time they were supposed to fight, and they did not want to get caught. News of the fight spread around the school, as did Tyler’s threat to break Nicholas’ leg with a karate move. On the day of the fight, Ware and Colantuoni were seen monitoring a boys’ bathroom, which they do not usually do. No teacher, however, approached Nicholas to ask him about the fight or otherwise intervened. Although the boys’ English teacher noticed that the two were missing and learned from other students that they were likely fighting, she did not attempt to intervene nor did she call an administrator to report the fight. As the English class started, Tyler confronted Nicholas in the boys’ bathroom on the second floor of the school. Tyler pushed and shoved Nicholas. Tyler then kicked his legs between Nicholas’ legs, striking and fracturing Nicholas’ femur. Nicholas could not get up due to the injuxy. As Nicholas lay on the floor, Tyler punched him in the head twice. Tyler and a friend then carried Nicholas to the nurse’s office.
The nurse evaluated Nicholas and saw that he was ciying, his right leg was swollen at and above the knee, he could not lift his leg below the knee, and his forehead and the left side of his face were red. The nurse called Ware to her office. When he arrived, he swore at the students and told Nicholas to “walk it off’ and come with him. The nurse intervened and told Ware that Nicholas was staying in her office. She put him in a wheelchair and called an ambulance. Nicholas was transported to Saints Memorial Hospital by ambulance.
As a result of the fight, Tyler was suspended for a short time. The Wynn School declined to expel him from the Tewksbury School system. Nicholas underwent multiple surgeries and hospital stays, and his injuries required physical therapy.
At all relevant times, the Wynn School was subject to the control and direction of the Tewksbury School Committee. The School Committee, pursuant to state law, had enacted policies, procedures, rules and regulations for school administrators and teachers to address the safe and efficient education of students and operation of Tewksbury public schools. One policy, entitled “Safe Schools,” was promulgated to provide a “safe learning and working environment for all students and staff,” and “to prevent, address, and punish those responsible for school-related violence and other behavior that is not conducive with attendance in a public school.” The School Committee also enacted a “bullying policy,” stating the school department’s zero-tolerance on bullying. The policy required “administrators and supervisors to make *557 clear to students and staff that bullying . . . will not be tolerated and will be grounds for the disciplinary action up to and including suspension and expulsion for students . . . [t]he district will investigate allegations of harassment, including bullying.” The School Committee had many additional policies pertaining to school safely, student welfare, and discipline.

DISCUSSION

When evaluating the sufficiency of a complaint pursuant to Mass.R-Civ.P. 12(b)(6), the court must accept as true the well-pled factual allegations of the complaint and make any reasonable inferences that can be drawn therefrom in the plaintiffs favor. Eyal v. Helen Broad. Corp., 411 Mass. 426, 429 (1991), and cases cited. The moving party’s burden at the 12(b)(6) stage has been eased to an extent by the Supreme Judicial Court’s decision in Ianhacchino v. Ford Motor Co., 451 Mass. 623, 635-36 (2008). Under the new standard, a claimant must provide “more than labels and conclusions . . . [factual allegations must be enough to raise a right to relief above the speculative level. . .” Iannacchino, 451 Mass. at 636, quoting Bell Atl. Corp. v. Twombley, 550 U.S. 544, 555 (2007).
The defendants claim that the tort-based counts, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and loss of consortium, are barred by the Massachusetts Tort Claims Act, G.L.c. 258, §10(j) (“MTCA”). The defendants argue that the count alleging that they have violated the Massachusetts Declaration of Rights fails to state a claim because the essence of the constitutional violation is the state’s failure to protect, which is not a recognized cause of action under the Massachusetts Constitution. In the alternative, the defendants argue that even if the Parsons maintain such a claim under the state constitution, they have not pled facts sufficient to meet the standard for an actionable violation.

I. Applicability of the MTCA to the Parsons’ Tort Claims

A. Negligence-based Claims

The MTCA provides a waiver of sovereign immunity in limited circumstances. Anderson v. Gloucester, 75 Mass.App.Ct. 429, 433 (2009). Section 10(j), however, retains sovereign immunity for “any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer . . .” G.L.c. 258, §10(j). The purpose of §10(j) is to immunize public employees for harm caused by a third person that the public employee failed to prevent. Brum v. Dartmouth 428 Mass. 684, 692 (1999). Under §10(j), immunity is only removed “where ‘the condition or situation’ was ‘originally caused by the public employer.’ ” Id., quoting G.L.c. 258, §10(j).
Brum is recognized as requiring an “affirmative act” by a public employer in order to show that the employer originally caused the condition or situation that led to the plaintiffs harm. See Kent v. Commonwealth 437 Mass. 312, 318 (2002); Parker v. Chief Justice of Admin. and Manag., 67 Mass.App.Ct. 174, 178 (2006); Audette v. Commonwealth 63 Mass.App.Ct. 727, 732 (2005). It is not enough for a plaintiff to simply “recast the failures as affirmative acts.” Audette, 63 Mass.App.Ct. at 733, quoting Brum, 428 Mass. at 693. Rather, the plaintiff must show that the public employer’s act “materially contributed to creating the specific ‘condition or situation’ that resulted in the harm.” Kent. 437 Mass. at 319.
Here, the Parsons have not alleged any affirmative act by the defendants that materially contributed to creating the specific condition or situation that caused Nicholas’ injuries. Rather, throughout the complaint, the Parsons claim that the defendants failed to discipline Tyler, failed to intervene, failed to properly train teachers and staff, and failed to implement School Committee policies. In an attempt to circumvent §10(j), the Parsons suggest that the defendants’ “halfhearted” intervention “emboldened” Tyler, and therefore materially contributed to the condition or situation that caused Nicholas’ harm. As evidenced by the other allegations in the complaint, this “act” is actually no more than a failure to intervene recast as an affirmative act. This is precisely the type of failure to prevent harm by a third person for which §10(j) provides governmental immunity. Accordingly, the MTCA bars the Parsons’ claims for negligence, negligent infliction of emotional distress and loss of consortium. See Sena v. Commonwealth of Mass., 417 Mass. 250, 264 (1994) (viable tort claim required to succeed on loss of consortium claim). Counts I, VII and IX must be dismissed.

B. Intentional Infliction of Emotional Distress

As a preliminary matter, the Parsons concede that they cannot bring an intentional tort claim against the Town of Tewksbury, because such claims are barred by G.L.c. 258, §10(c). Section 10(c), however, does not, bar intentional tort claims against individual public employees. To assert a claim for intentional infliction of emotional distress against Ware and Colantuoni, the Parsons must show: 1) the defendants intended to cause, or should have known their conduct would cause, emotional distress; 2) the conduct was extreme and outrageous; 3) the conduct caused the plaintiffs’ distress; and 4) the plaintiffs suffered severe distress. Jones v. Maloney, 74 Mass.App.Ct. 745, 750 (2009). Extreme and outrageous conduct is that which is “beyond all bounds of decency and . .. utterly intolerable in a civilized community.” Sena, 417 Mass. at 264. Whether the alleged tortious conduct meets this standard may be determined as a matter of law. Id.
Defendants Ware and Colantuoni’s conduct was not, as a matter of law, beyond all bounds of decency *558 and utterly intolerable in a civilized community. Although they appear to have mishandled and underestimated the seriousness of the situation between Tyler and Nicholas, their conduct as alleged in the complaint does not rise to the level of intentional infliction of emotional distress. Therefore Count VI must be dismissed.

II. Cause of Action under Massachusetts Declaration of Rights

The Parsons claim that the defendants violated Articles I, X, XI, XII and CVI, as well as the Preamble of the Massachusetts Declaration of Rights.[3] No Massachusetts appellate court has conclusively addressed the question of whether a party may bring a cause of action for damages based solely on the Declaration of Rights in the absence of a statutory vehicle. See, e.g., Layne v. Superintendent, Mass. Corr. Inst., Cedar Junction, 406 Mass. 156, 159-60 (1989) (noting that there may be a cause of action for state constitutional violations even in absence of statute), quoting Phillips v. Youth Devel. Prog., 390 Mass. 652, 657-58); see also Martino v. Hogan, 37 Mass.App.Ct. 710, 720 (1994) (recognizing, in claim for money damages under state constitution, that no decision on viability of such a claim has been reached; court did not rule on the issue).[4]
There is, however, some indication that such an action would be recognized. In Layne, the Court stated,
“(A) person whose constitutional rights have been interfered with may be entitled to judicial relief even in the absence of a statute providing a procedural vehicle for obtaining relief.” Phillips v. Youth Dev. Program, Inc., 390 Mass. 652, 657-58 (1983). Certainly a State may not violate a person’s constitutional rights and then fairly assert that no redress can be had because the State has not provided a statutory means of enforcing those rights.
406 Mass. at 159-60. In Martino, the court recognized that,
There has been discussion of grounding a cause of action on the State Constitution for violation of its provisions where no statutory avenue for enforcement has been fashioned and made available . . . To be considered before such a step is taken is the fact of the existence of Section 1983 and the State analogue, our Civil Rights Act, G.L.c. 12, [§§]11H & 111: these may be thought, as it were, to occupy the field.
37 Mass.App.Ct. at 720. At least one justice of the Superior Court has also indicated that claims brought directly under the Declaration of Rights should be permitted. See McClure v. East Brookfield, 1999 WL 1323628 *2 (Mass.Super. 1999) [9 Mass. L. Rptr. 680] (denying defendant’s motion for summary judgment on plaintiffs claim under Declaration of Rights). Here, unlike the cases cited above, this Court must decide whether the Parsons can maintain their claim under the state constitution, having decided that the MTCA does not provide a cause of action under the circumstances present. In light of the Supreme Judicial Court’s indication that a cause of action is likely viable for violations of the state constitution in situations where there is no statutory vehicle for relief, and recognition that constitutional violations may occur even where there are no acts of threats, coercion or intimidation, see G.L.c. 12, §§11H & 111, this Court finds that, as a general proposition, a cause of action can, in certain circumstances, be brought directly under the Massachusetts Declaration of Rights in the absence of a statutory vehicle for obtaining relief.
The question remains whether the Parsons have articulated a violation of the state constitution. Count II of the complaint in this action alleges violations of Nicholas’ substantive due process right to safety and protection.[5] In analyzing the state constitutional claim, this Court recognizes that the Declaration of Rights “may afford greater protection of rights than the due process clause [under Federal law],” however, “(the Supreme Judicial Court’s] treatment of due process challenges adheres to the same standards followed in Federal due process analysis.” Cote-Whiteacre v. Department of Pub. Health, 446 Mass. 350, 366 n.15; see also Centrangelo v. Lloyd, 61 Mass.App.Ct. 1117, *2 (2004) (Rule 1:28 decision) (where plaintiff brought claims under federal and state constitutions for state’s failure to protect, court dismissed both claims pursuant to federal standard). Under Federal jurisprudence, the due process clause does not guarantee citizens that they will be protected by the government from non-governmental actors. Brum, 428 Mass. at 698, citing DeShaney v. Winnebago County Dept. of Soc. Servs., 489 U.S. 189, 196-97 (1989). “[A] State’s failure to protect an individual against private violence simply does not constitute a violation of the [federal] Due Process Clause.” DeShaney, 489 U.S. at 197, quoted by Brum 428 Mass. at 698.
In limited circumstances, however, state inaction may give rise to liability. Heretofore, those circumstances have arisen in prisoner cases and involuntarily committed mental patients, where the state has mandated confinement and a duty to protect is imposed on the state. See Hasenfus v. LaJeunesse, 175 F.3d 68, 71 (1st Cir. 1999). A failure of that duty may be vindicated under the federal civil rights act, 42 U.S.C. §1983, where the standard for a violation of constitutional rights is “deliberate indifference.” Id. Although many plaintiffs have requested courts to extend this “duty to protect” to school children, it does not appear that any court has been willing to do so. Id. Even if a public school could be held liable for failing to protect students in specific, limited circumstances- — such as where it fails to provide medical attention to an injured student — the First Circuit has noted that the conduct required to establish a violation of substantive due process would need to be “so *559 extreme as to ‘shock the conscience.’ ” Id. at 72, quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (stating the standard for substantive due process violations generally).
Although, as the plaintiff argues, the Massachusetts Declaration of Rights and the United States Constitution, are subject to different interpretations, as noted in Cote-Whiteacre, the Massachusetts due. process provisions are generally interpreted using the Federal standards. There is simply no decisional authority presented to this Court that the Supreme Judicial Court would depart from the Federal standard and hold a public school liable for failing to protect a student from harm by a non-governmental actor. Even if the Supreme Judicial Court were inclined to make an exception for school children to the general principle that a state has no duty to protect, the standard for a violation would likely be whether the conduct “shocks the conscience.” The failures of the defendants as alleged in the complaint cannot be construed, as a matter of law, to have reached this level of egregiousness. Therefore, Count II fails to state a claim upon which relief may be granted, and must be dismissed.

ORDER

For the foregoing reasons, Counts I (negligence), II (Massachusetts Declaration of Rights violations), VI (negligent infliction of emotional distress), VII (intentional infliction of emotional distress), and IX (loss of consortium), as alleged against the defendants Town of Tewksbuiy, Robert Ware and Adam Colantuoni, are DISMISSED.

The complaint states that the defendants deprived Nicholas “of his right to enjoy in safety and tranquility his natural rights and the blessings of life and liberty; of his right of enjoying and defending his life and liberty; of his right of seeking and obtaining safety and happiness; of his right to be protected by society in the enjoyment of his life, liberty and property according to standing laws; of his right to find remedy by having recourse to the laws for all injuries and wrongs which he has received to his person, property or character; and of his right not to be put out of the protection of the law or deprived of liberty or estate but by the judgment of his peers and the law of the land . . ."

Justices of this court have declined to address the unsettled issue of independent claims under the Declaration of Rights at the motion to dismiss stage. See, e.g., Jackson v. Verdini, 2005 WL 1457748 *8 n.3 (Mass.Super. 2005) [19 Mass. L. Rptr. 539]; Moore v. McManus, 1998 WL 77904 *11 (Mass.Super. 1998) [8 Mass. L. Rptr. 263). It is appropriate in this case to decide the issue at this stage because the remaining counts against the municipal defendants have been dismissed, and the parties are in agreement that this question of law is ripe for determination.

The Parsons’ opposition memorandum refers to the alleged civil rights violations as a violation of Nicholas’ rights to due process. See also note 3, supra.