Wilson, Paul D., J.
This lawsuit now concerns three intentional torts allegedly committed against a third grader, Alex Maclellan, by his teacher Sarah Dahlheimer and elementary school principal Ian P. Kelly. The complaint originally filed by his mother (“Ms. Maclellan”) on behalf of Alex alleged the intentional tort of defamation, as well as negligence and negligent infliction of emotional distress, against the teacher, the principal and the Natick Public Schools. However, the Maclellans had failed to make a proper written presentment to the Defendants under the Massachusetts Tort Claims Act, M.G.L.c. 258, §4, which required dismissal of most of the original complaint. With leave of court, Ms. Maclellan filed an Amended Complaint on behalf of Alex, this time only against Dahlheimer and Kelly, this time in their individual capacities, and this time accompanying the defamation claim with two new counts alleging the intentional torts of assault and batteiy and intentional infliction of emotional distress.
Defendants Dahlheimer and Kelly have now moved to dismiss the two newly added counts. They assert that the Amended Complaint fails to state a claim upon which relief can be granted for assault and battery or for intentional infliction of emotional distress. For the reasons explained below, I will allow the motion to dismiss.
Background
The problems that led to this lawsuit arose in a third grade classroom at Bennett-Hemenway elementary school, a public school in Natick. Alex’s third grade teacher was Defendant Dahlheimer, and the school principal was Defendant Kelly. Accepting as true the facts alleged in the Amended Complaint, as required by Nader v. Citron, 372 Mass. 96 (1977), the relevant facts are as follows.
On March 7, 2011, Dahlheimer accused Alex of stealing a distinctive pen from her. Dahlheimer mistakenly believed that the pen in Alex’s possession had been given to her by her father. In fact, Alex’s uncle had given him that pen for Christmas. Dahlheimer made this false accusation in a loud enough voice that Alex’s fellow third-graders could hear her. This statement forms the basis for the defamation count, which Defendants have not moved to dismiss.
When Alex’s parents complained to Dahlheimer and Kelly about the false accusation, they were told that Dahlheimer would make a public retraction in front of Alex’s classmates. At the time scheduled for the retraction, Defendants separated Alex from his classmates. While Kelly distracted the other students in the back of the room by speaking in a loud voice on another subject, Dahlheimer returned Alex’s pen, stating, “I really love you.” However, Dahlheimer never told her class that Alex had not stolen the pen.
The Amended Complaint also complains of other Dahlheimer conduct toward Alex. For instance, when Alex had difficulty with an arithmetic assignment, she stood close to him and said, “You really make me sad you don’t get fractions; I really love you.” On another occasion, before giving back the pen, Dahlheimer told Alex that she would not give it back but that she “really loved him and cared for him and don’t tell anyone about this.” Finally, when she was collecting MCAS exams from her students, she took Alex’s completed exam and rubbed the center of his back in a circular motion with her hand, in front of the entire class, without saying anything.
In addition to these specific instances of allegedly “inappropriate” behavior, Amended Complaint ¶10, the Amended Complaint also accuses Dahlheimer of more general offenses, such as “react[ing] strongly and inconsistently with Alex,” not allowing him to make up homework in the manner normally allowed, being overtly critical of him without cause, and expressing inappropriate personal affection for him. Id., ¶11. Alex found her inconsistent treatment of him to be emotionally distressing and confusing.
The Amended Complaint also contains a page-long list of incidents in which Alex was bullied by his classmates. The Amended Complaint alleges upon information belief that this bullying by others was caused by the disparaging way Dahlheimer treated Alex in front of the class. In addition, the Amended Complaint alleges that Dahlheimer and Kelly took no action to stop this bullying, although they knew about it.
*551 As to Principal Kelly, the allegations of the Amended Complaint are thinner. In addition to distracting Alex’s classmates while Dahlheimer return the pen, and failing to stop the bullying, Kelly stands accused of “from time to time . . . following] Alex around school in a menacing way, staring and glaring at him for no reason.” Amended Complaint ¶12. In addition, Kelly is accused of telling Alex’s parents at some point that he would not talk to them anymore and they should not bother calling him or leaving any messages at his office. The only other notable allegation about Principal Kelly is that on one occasion he saw Alex in the nurse’s office and asked him why he was there; rather than tell Kelly the truth, that he was there because of bullying, Alex said he had a stomachache because Kelly had made clear that he did not want to hear any more complaints from Alex.
Analysis
In order to survive a motion to dismiss under Mass.R.Civ.P. 12(b)(6), a complaint must include factual allegations which “raise a right to relief above the speculative level.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), citing Bell Atlantic Corp. v Twombly, 550 U.S. 554, (2007). In Iannacchino, the Supreme Judicial Court retired the earlier, less onerous of standard of Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that formerly permitted a complaint to survive a motion to dismiss unless it appeared beyond all doubt that the plaintiff could prove no set of facts that would entitle him to relief. Whether or not the challenged counts of this Complaint would have survived under the standard of Conley and the Massachusetts cases following Conley, I must dismiss them under Iannacchino.
1. Intentional Infliction of Emotional Distress
The Amended Complaint alleges that both Defendants committed the tort of intentional infliction of emotional distress. This is the only count brought against Principal Kelly.
When it first recognized the tort of intentional infliction of emotional distress, in Agis v. Howard Johnson Co., 371 Mass. 140 (1976), the Supreme Judicial Court imposed a very high standard on plaintiffs hoping to prevail in such claim. Among the prerequisites for liability for this tort is that “the Defendant’s conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community.” Id. at 144-45. That level of outrageousness was reached in Agis, the court ruled, when the manager of a restaurant: (1) first announced to his waitresses that “there was some stealing going on” and that he was going to fire them in alphabetical order until someone confessed; and (2) then fired plaintiff Agis because she came first in alphabetical order. Id. at 141.
Accepting as true every allegation in the Amended Complaint, and making all reasonable inferences in favor of Plaintiff, I conclude that the allegations of the Amended Complaint do not rise to the level of outrageousness required by Agis.
The primaiy complaint against Kelly concerns his joint scheme with Dahlheimer to distract Alex’s classmates while Dahlheimer delivered — or did not deliver — the apology she and Kelly had promised to Alex’s parents. Also pled in reasonable detail is the encounter in the nurse’s room in which Alex was afraid to tell Kelly the truth about why he was there. Another allegation of fact is the assertion that at some point Kelly told Alex’s parents that he would no longer talk to them or respond their messages. (Although- the Amended Complaint does not say whether Kelly carried through in this regard, I will infer, in Plaintiffs favor, that he did.) Finally, there is the allegation that Kelly would follow Alex around the school from time to time in a menacing way. Whether these acts are considered individually or collectively, this conduct simply does not rise to the level of being “beyond all possible bounds of decency and ... utterly intolerable in a civilized community.” Id.
As to Dahlheimer, the primaiy allegation is that she wrongfully accused Alex of theft, and then failed to tell the rest of the class, or even Alex himself, that she retracted that accusation — although she did return to Alex the pen that was the object of the accusation, telling him as she did so that she loved him. There is also the allegation that she rubbed his back silently when she picked up his MCAS exam (which is treated in more detail below, as it forms the basis for the civil battery count). There is the allegation that she told Alex, “You really make me sad you don’t get fractions; I really love you,” while standing close to him. There is also the more general allegation that she confused Alex by sometimes being strict with him and sometimes expressing “inappropriate” affection.
The facts surrounding the accusation about the pen do not rise to the level of being utterly intolerable in a civilized community. In any event, this case will go forward with regard to those allegations, if Plaintiff chooses to pursue them, because they are the focus of the defamation count, which Defendants have not moved to dismiss. The remaining allegations, considered separately or collectively, do not rise to the level of being utterly intolerable in a civilized society, either. In fact, the teacher’s behavior in sometimes being critical of a student and sometimes expressing affection to that same student are commonplace in a classroom populated by younger students and a teacher who is trying to do her job as best she can.
There remain the bullying allegations concerning both Defendants. If the Amended Complaint alleged that a school principal, or a third-grade teacher, was bullying an eight-year-old, such actions might satisfy the very high standard for intentional infliction of emotional distress. However, the Amended Complaint’s allegations about bullying are not that *552 Defendants engaged in it themselves, but simply that Kelly and Dahlheimer failed to stop bullying by other students, after Dahlheimer, upon information and belief, created an atmosphere conducive to the bullying of Alex by the disparaging way she treated him (presumably when she was not being affectionate toward him) in front of his classmates.
Another judge of this court recently rejected claims for intentional infliction of emotional distress brought by a student against school officials in a case also concerning allegations that the Defendants had not stopped easily predictable or known bullying. Parsons v. Town of Tewksbury, 26 Mass. L. Rptr. 555 (2010), 2010 WL 1544470. In that case, among other serious allegations was that the defendant school officials failed to stop or prevent a long-announced fistfight between bully and victim, in which the victim suffered a broken leg, after which one of the Defendants told the victim to “walk it off.” Id. at 556. Finding that the school officials “appear to have mishandled and underestimated the seriousness of the situation,” the court nonetheless found that their conduct did not rise to the level of intentional infliction of emotional distress. Id. at 557. The same is true concerning the somewhat milder allegations concerning bullying in the present case.
Where the conduct of public employees is at issue, the legislature and the courts have been particularly careful to ensure that their decisions made in the course of their duties cannot easily be second-guessed in the courtroom. One example is the “discretionary action” immunity from suit provided to public employees in the Massachusetts Tort Claims Act, M.G.L.c. 258, § 10(b), which prohibits lawsuits against public employees in their official capacities over actions taken when they “perform a discretionary function or duty.” In similar fashion, the courts do not lightly hold public employees liable in their individual capacities for the tort of intention infliction of emotional distress. For example, Sena v. Commonwealth, 417 Mass. 250 (1994), was a lawsuit against police officers accused of negligently conducting an investigation into the theft of a historical artifact, and then wrongly arresting the plaintiffs for its theft even though the plaintiffs had bought the item at Brimfield Flea Market and they themselves had contacted the true owner to ask if the item had been stolen. Even though the negligent conduct and wrongful arrest resulted in both plaintiffs being jailed, one of them overnight, the Supreme Judicial Court upheld the dismissal of their claim of intentional infliction of emotional distress, finding, “The conduct of which the plaintiffs complain as a matter of law cannot be deemed extreme and outrageous.” Id. at 264.
The same is true as to the allegations in this case. As a matter of law, the Amended Complaint fails to allege conduct sufficiently extreme and outrageous to constitute the tort of intentional infliction of emotional distress.
2. Assault and Battery
The remaining count challenged by Defendants charges Dahlheimer with “assault and battery.” In fact, assault and battery are two different torts. In response to the motion to dismiss, Ms. Maclellan has now conceded, in her written opposition and at oral argument, that she has not stated a claim against Dahlheimer for assault. That leaves the civil battery claim.
The test for civil battery is as follows: “[A]n actor is subject to battery if he acts intending to cause a harmful or offensive contact with the person of the other ... or an imminent apprehension of such a contact, and a harmful contact with the person of the other directly or indirectly results.” Waters v. Black-shear, 412 Mass. 589, 590-91 (1992). Of particular relevance here is the test for the Defendant’s intent: “the act [must be] done for the purpose of accomplishing the result” — harmful or offensive contact — "or with knowledge that to a substantial certainty such a result will ensue." Id.
According to the Amended Complaint, the alleged battery was that Dahlheimer rubbed Alex’s back when she collected his MCAS exam. The Amended Complaint does not assert that the backrub was harmful, nor could it on the facts alleged. Therefore the question is whether the Amended Complaint makes out a claim for “offensive touching” battery, and more specifically, whether there are allegations of the required intent.
There are not. The Amended Complaint simply alleges that Dahiheimer rubbed Alex’s back briefly, in front of the entire class, on an occasion that can be difficult for grade schoolers, without saying a word. The fact that the backrub was offensive to Alex is alleged only in conclusory fashion (“rubbing his back in an offensive and inappropriate manner,” Amended Complaint ¶21). And Dahlheimer’s offensive intent is alleged in equally conclusory fashion; the Amended Complaint suggests that Dahlheimer should not have “switched to affectionate rubbing of Alex’s back” from her earlier frequent criticism of Alex. Id.
These allegations are the sort of conclusory pleading that is insufficient under Iannacchino. Even accepting that Alex subjectively found the backrub to be offensive, it is simply not possible to reasonably infer from the facts alleged concerning the backrub that Dahlheimer intended to cause offense in touching Alex. The Amended Complaint, therefore, fails to state a claim for civil battery.
Conclusion and Order
In this decision, I do not intend to minimize the unhappiness that Alex and his parents apparently felt during the last three months of his third-grade year. Nor do I intend to downplay the difficult decisions faced by schoolteachers and principals about how best *553 to teach and protect the children in their care. I simply determine that, under the law of Massachusetts, the court is not the appropriate place to resolve the claims made in Counts II and III of the Amended Complaint. In legal terms, the claims of assault and battery and intentional infliction of emotional distress brought in those counts fail to state claims upon which relief can be granted. Therefore I ALLOW Defendants’ Partial Motion to Dismiss Plaintiffs Amended Complaint.